**FILED**

06/07/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 12, 2024 Session

## LINDSEY BROOKE LOWE v. STATE OF TENNESSEE

Appeal from the Criminal Court for Sumner County
Nos. 2019-CR-817, 2011-CR-834 Dee David Gay, Judge

_____

### No. M2022-01490-CCA-R3-PC

_____

Petitioner, Lindsay Lowe, was convicted by a Sumner County jury of two counts of first degree murder and two counts of aggravated child abuse for killing her newborn twin sons shortly after their birth at her parents' home and concealing their bodies in a laundry basket. *State v. Lowe*, 552 S.W.3d 842, 846-48 (Tenn. 2018), *cert. denied*, 139 S. Ct. 1204 (2019). Her convictions and resulting life sentence were affirmed on direct appeal, and the Tennessee Supreme Court affirmed. *Id.* Petitioner unsuccessfully sought rehearing. Petitioner then sought a writ of certiorari in the United States Supreme Court, which was denied. *Id.* Petitioner ultimately filed an untimely petition for post-conviction relief in which she made innumerable allegations of ineffective assistance of counsel as well as several constitutional violations that she argued necessitated reversal of her convictions. Petitioner also requested due process tolling of the post-conviction statute of limitations based on erroneous legal advice about when the statute of limitations commenced.[1] The post-conviction court determined due process tolling was warranted and permitted Petitioner to have a lengthy hearing on the merits of the post-conviction petition. After the hearing, the post-conviction court granted post-conviction relief on the basis that a juror was presumptively biased against Petitioner, violating her right to a fair trial, and that trial counsel's failure to remove the juror violated Petitioner's right to effective assistance of counsel. The post-conviction court did not address the merits of any of the remaining claims in the petition. In this timely State appeal, we determine first that the post-conviction court improperly granted due process tolling of the statute of limitations for post-conviction relief. Additionally, because the post-conviction court went on to grant post-conviction relief, we review those findings of fact and conclusions of law and determine that the post-conviction court also erred in finding that the juror was presumptively biased and that trial counsel was ineffective. As a result, we reverse and remand the judgment of the post-conviction court. All of Petitioner's convictions are reinstated and her petition for post-conviction relief is dismissed.

_____

[1] Petitioner also simultaneously sought federal habeas corpus relief. According to the parties, that case was stayed pending the disposition of this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded; Petition Dismissed; Convictions Reinstated**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and CAMILLE R. MCMULLEN, P.J., joined.

Jonathan Skrmetti, Attorney General and Reporter; T. Austin Watkins, Associate Chief Deputy Attorney General; Lawrence Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellant, State of Tennessee.

Tyler Chance Yarbro (on appeal); Kimberly S. Hodde (at hearing), Nashville, Tennessee, for the appellee, Lindsey Lowe.

**OPINION**

While belaboring the underlying facts leading up to this appeal are not necessary to our resolution of the issues on appeal, a brief explanation of the factual background is important to give suitable context to the procedural posture of the case.[2] In September of 2011, Petitioner was a twenty-five-year-old college graduate. Petitioner was engaged to be married, working at a dentist's office, and living with her parents and younger sister in her parents' home in Sumner County. *Id.* at 847. Unbeknownst to her parents or sister, Petitioner was pregnant with twins, the father of whom was a man who was not her fiancé. *Id.* During the night of September 12, 2011, Petitioner gave birth without assistance to live twin boys in the bathroom she shared with her sister. *Id.* Petitioner concealed the births and stifled her sons' cries with her hand before hiding the bodies of the twins in a laundry basket and cleaning up the bathroom. *Id.* Petitioner called in sick to work on the day of the deliveries. *Id.* at 848. The next day, when Petitioner returned to work, her mother discovered one of the dead newborns in a laundry basket in Petitioner's bedroom. *Id.* When Petitioner was questioned by police that afternoon, she admitted that she gave birth to two newborns and covered the mouth of each of the babies as she delivered them to keep them quiet. *Id.* The second dead newborn was discovered in the bottom of the same laundry basket after Petitioner's admission to the police.

Petitioner was arrested and charged with two counts of first degree murder, two counts of felony murder, and two counts of aggravated child abuse. Petitioner sought the assistance of appellate counsel, a local attorney with years of experience in criminal law.

---

[2] This Court takes judicial notice of the record from the direct appeal. *State ex rel. Brown v. Newell*, 391 S.W.2d 667, 669 (Tenn. 1965).

He was out of the country on vacation at the time and referred Petitioner to trial counsel, another highly regarded and experienced local attorney who practiced primarily in criminal law. Quickly, the case garnered quite a bit of media attention due to the nature of the facts. Trial counsel moved for a change of venue, but that request was denied.

Based on the level of pretrial publicity, a written jury questionnaire was submitted to prospective jurors in advance of jury selection, including one woman, identified as Juror Number 17 on the jury questionnaire ("Juror 17"),[3] who was ultimately seated on the jury.

According to the questionnaire, Juror 17 was a 47-year-old married physical therapist with two young children. Juror 17 watched the news daily and had heard about Petitioner's case on the "nightly local news." Juror 17 responded to the question, "Have you formed an opinion based on what you have heard?" by marking the box next to "Yes." Juror 17 wrote that, in her opinion, "[Petitioner] lied and killed her two newborns." Despite this answer, Juror 17 marked "Yes" when asked if she "could lay that opinion aside, and based on the evidence and law, reach a fair verdict" and "[c]ould sit as a juror in this case, listen to the proof and law and be absolutely fair." In the details section, Juror 17 indicated that she was "honest [and] follow[s] the law."

As jury selection began, the trial judge gave routine preliminary jury instructions. The trial judge admonished prospective jurors about the importance of being impartial and about the presumption of innocence afforded to criminal defendants like Petitioner. When the first prospective panel was drawn from the jury venire, the trial judge addressed the prospective panel about pre-trial publicity and bias. The trial court excused several potential jurors because they said they could not or were not sure if they could be fair and impartial. The trial court did not, however, excuse potential jurors on the basis that they formed an opinion about the case based on pretrial publicity but insisted that they could be fair and impartial.

As jury selection continued, and the first round of peremptory challenges was exercised by each side, Juror 17 was seated on the jury panel with seven other potential jurors. The trial court asked if any of the panel members had a hardship that would prohibit them from serving on a jury. The trial court then asked, "Do any of you all have any opinions or experiences of anything that would taint you or keep you from being fair and impartial in evaluating your duties as exclusive finders of the facts?" The trial judge then specifically asked Juror 17 and another prospective juror, "[C]an you be fair and impartial before you hear any proof in this case?" Juror 17 answered, "Yes, sir." The other juror exclaimed, "Personally, I don't think I can." The other juror was excused. The trial court continued to question members of the panel about their answer to the above question,

---

[3] We have chosen to identify the juror by her number rather than her name.

- 3 -

resulting in two more jurors being excused because they expressed an inability to be fair or had "pretty well" made up their mind about the case.

Next, the trial judge questioned the jury panel about the extent to which they had heard or seen any pretrial publicity about the case. Juror 17 was questioned with one other juror. One of them, identified only as "prospective juror" indicated that she had heard about the case before coming to court. Juror 17 stated that she had not formed an opinion as to the guilt or innocence of Petitioner and that she could be fair and impartial. When specifically questioned by the State, Juror 17 admitted that she heard most of the information about the case from "local TV" when she saw "the initial arrest." She denied watching "much more news since then" and denied any first-hand knowledge of the case.

When the entire panel was asked, Juror 17 agreed that she could reach a guilty verdict if the State proved its case. Juror 17 also reported that she had adopted two children but that the adoption would have no effect on how she viewed the case and did not have "any problem" giving both parties a fair trial. Counsel for the State commented that each prospective juror agreed to put aside both "sympathy" and "prejudice" while serving on the jury and would "base [their] verdict on the law itself and the evidence." Counsel for Petitioner asked Juror 17 if she would be able to "stand [her] ground and vote [her] conviction" if selected to the jury. She responded in the affirmative. Counsel again reviewed the questionnaires and asked Juror 17 how she heard about the facts of Petitioner's case. She responded that she watched the "local news" and "immediately" recognized the case at the time she received the jury questionnaire. Juror 17 reported that she had not discussed the case with anyone and that even if she saw photographs of the victims' bodies, she would be able to "consider all the evidence."

There was at least one other juror who filled out the questionnaire by responding that he had an opinion about the case. Trial counsel stated to the potential jury pool that people often "form opinions" about cases based on what they see on the news. This prospective juror admitted that his opinion had changed since filling out the questionnaire and that he felt he could be impartial. This juror was ultimately empaneled as an alternate juror.

Trial counsel wrapped up his questioning with the following: "Just one last time, just to make sure. Is there anybody that has any problem, either with things that you've heard today, anything about the particular facts in this case, that you think it is going to make it difficult for you to be impartial or is there anybody that has some personal issue?" None of the jury panel indicated a problem. Counsel for Petitioner exercised all but one of the peremptory challenges and Juror 17 was seated on the jury.

The case proceeded to trial. At the conclusion of the jury trial, Petitioner was convicted by a Sumner County jury of two counts of first degree murder and two counts of aggravated child abuse. *Id.* at 848. As a result of the convictions, Petitioner was sentenced to an effective sentence of life imprisonment. *Id.* at 849.

Petitioner appealed her convictions. On direct appeal, both this Court and the Tennessee Supreme Court affirmed Petitioner's convictions. *Id.* at 872; *State v. Lowe*, No. M2014-00472-CCA-R3-CD, 2016 WL 4909455, at *1 (Tenn. Crim. App. July 12, 2016), *perm app. granted* (Jan. 18, 2017). The Tennessee Supreme Court denied rehearing on August 1, 2018 by order. Petitioner then filed a timely petition for writ of certiorari in the Supreme Court of the United States. It was denied on February 19, 2019. *Lowe v. Tennessee*, 139 S. Ct. 1204 (2019).

On September 5, 2019, Petitioner filed an untimely petition for post-conviction relief. As relevant to this appeal, Petitioner alleged that trial counsel provided ineffective assistance of counsel during jury selection by failing to remove a juror who was biased. Additionally, Petitioner sought due process tolling of the statute of limitations for post-conviction relief because the petition was untimely by over a month. Petitioner insisted that erroneous legal advice from several attorneys led to an improper calculation about when the statute of limitations began. Around this same time, Petitioner also sought federal habeas corpus relief. As noted above, the federal proceeding was stayed pending the disposition of this case.

The State responded to the untimely petition for post-conviction relief, arguing that a mere miscalculation of the filing deadline was not a sufficient basis to invoke due process tolling of the statue of limitations. The trial court held an evidentiary hearing in order to determine whether due process tolling was warranted.

*Equitable Tolling/Due Process Hearing*

At the hearing, the post-conviction court learned that throughout Petitioner's trial and appeals Petitioner was represented by several different attorneys. Trial counsel, appellate counsel, and supreme court certiorari counsel were each involved at various points in Petitioner's case.

Appellate counsel testified. He recalled that he received a call about representing Petitioner at trial. He was out of the country when Petitioner was arrested so he referred Petitioner's father, Mark Anthony Lowe, to trial counsel. Appellate counsel continued to provide what he referred to as "tactical assistance" to trial counsel during the trial and ultimately represented Petitioner on direct appeal. After the direct appeal of Petitioner's convictions was unsuccessful, appellate counsel talked to Petitioner about her remaining

- 5 -

options and they decided to file a petition for rehearing in the Tennessee Supreme Court on a retroactivity question. Appellate counsel thought that this might set Petitioner up to have a successful writ of certiorari in the United States Supreme Court. The petition for rehearing was denied by the Tennessee Supreme Court on August 1, 2018. That same day, appellate counsel wrote Petitioner a letter. In the letter, appellate counsel advised Petitioner that she had "exactly one year from August 1, 2018 to file a petition for post-conviction relief back in the trial court" irrespective of whether she "decide[d] to appeal to the Supreme Court of the United States." Appellate counsel advised Petitioner that she needed to "keep track of the deadline dates, so you do not lose your valuable right to appeal to the Supreme Court of the United States, but more importantly, to file a post-conviction petition in the state court." In a follow-up letter sent around one week later, the subject of which was seeking certiorari, appellate counsel again told Petitioner the post-conviction petition "still has to be filed within 1 year."

At some point after that, Mr. Lowe recalled a conversation with appellate counsel in which appellate counsel advised Mr. Lowe to seek certiorari, and "then we can wait on the post-conviction until we hear from that." Appellate counsel testified at the hearing that Mr. Lowe may have thought that the statute of limitations did not run while Petitioner was seeking certiorari. Admittedly, appellate counsel mistakenly told Petitioner the incorrect date on which she had to file a petition for post-conviction relief. Appellate counsel insisted that it was a mistake; he never intentionally misinformed Petitioner or Mr. Lowe about the case.

Appellate counsel and certiorari counsel prepared and filed the petition for writ of certiorari. It was denied on February 19, 2019. After the denial, counsel had a conference call with Mr. Lowe. This time certiorari counsel told Mr. Lowe that the "clock" began to run when the Supreme Court denied certiorari. Appellate counsel did not suggest otherwise. In fact, after the conference call, certiorari counsel sent an email to Mr. Lowe in which he repeated this erroneous advice. The email stated that the "denial starts the clock for filing of [Petitioner's] petition for post-conviction relief" and encouraged her to "speak with a lawyer quickly if [Petitioner would] like to pursue that route.

Mr. Lowe met with several attorneys about filing the post-conviction petition. According to Mr. Lowe, no other attorney told him anything different about the statute of limitations. In fact, at least one other attorney agreed that the statute of limitations ran from the expiration of the denial of certiorari from the United States Supreme Court.

Petitioner's parents met with post-conviction counsel on April 23, 2019. At that meeting, post-conviction counsel agreed with certiorari counsel's miscalculation of the statute of limitations. Post-conviction counsel affirmed this improper date again during a meeting with Petitioner. Post-conviction counsel finally realized the error on August 27,

2019, by which time the statute of limitations had expired on Petitioner's post-conviction claim. At that time, post-conviction counsel consulted with Petitioner and her parents and filed the post-conviction petition along with a motion to toll the statute of limitations for due process concerns on September 5, 2019.

At the hearing, Mr. Lowe testified that prior to Petitioner's arrest, their family did not have any experience with the legal system. Mr. Lowe conducted his own research throughout the process. He found a chart on the Tennessee Attorney General's website about the state appellate process. The chart had a heading entitled "Direct Appeal." Under that heading there were three boxes: one labeled Court of Criminal Appeals, one labeled Tennessee Supreme Court, and one labeled United States Supreme Court. The chart was followed by text describing the state appellate process. The text did not discuss the United States Supreme Court. The next heading was entitled "Post-Conviction Petition." Under that heading, the following sentence appeared, "Within one year of the final order in a case, a defendant may file a petition for post-conviction relief in the county trial court." Mr. Lowe explained that he used the information he found on the website to understand how the process worked. Mr. Lowe and Petitioner believed that the statute of limitations ran from the denial of certiorari because of the advice they received from appellate counsel, certiorari counsel, and post-conviction counsel.

At the conclusion of the hearing, the post-conviction court made fairly extensive findings on the record. Specifically, the post-conviction court noted that this was an "unusual factual situation" but that the facts were undisputed. The post-conviction court found that Petitioner was "acting in reliance on all the advice that [she] received" from various attorneys. The post-conviction court noted that post-conviction counsel and Petitioner "were making plans in reliance on [the advice] and they were actively pursuing a remedy for post-conviction relief in state court." The post-conviction court found that a "petitioner is entitled to due process tolling upon a showing that he or she has been pursuing his or her rights diligently" and there was "no question here" that Petitioner was doing so. The post-conviction court accredited the testimony of Mr. Lowe and found that "there is not one thing that [Petitioner] did that was not in reliance on her attorney." The post-conviction court also determined that an "extraordinary circumstance stood in [Petitioner's] way and prevented timely filing." The post-conviction court questioned how Petitioner could be "held responsible for something that she had no party in, that she was relying on advice of all these attorneys?" The post-conviction court felt this was one of "those rare instances where due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." The post-conviction court commented that this was not an instance of negligence on the part of an attorney but a "situation where [Petitioner] and her family relied on that advice and everything they did was pursuant to that." The post-conviction court deemed it "misrepresentation by at least four attorneys" and that the "extraordinary

circumstances" prevented Petitioner from timely filing the petition. Finding otherwise would "be a complete lack of due process to take these errors and these misrepresentations by these attorneys and apply that to [Petitioner] and prevent her from another level of appeal." As a result, the post-conviction court found that Petitioner not only "pursued her rights diligently," but that "the combination of all these facts prevented the timely filing." The trial court granted the motion for due process tolling and docketed an evidentiary hearing on the petition for post-conviction relief.

*Evidentiary Hearing*

At the post-conviction hearing which spanned three and one-half days, there was testimony from five experts, two attorneys, Petitioner, and Mr. Lowe. Some of the testimony is not relevant to the resolution of the issues on appeal herein, so we have chosen to abbreviate our summary of the proof at the hearing, limiting it to the testimony that is relevant on appeal to the issue regarding Juror 17.

Mr. Lowe testified that he was seated "inside the bar" in the courtroom near the jury box during jury selection because there was not enough room for spectators in the gallery. Mr. Lowe testified that as the trial judge announced that the final jury was selected, Juror 17 gave "a fist pump" and said, "yes" while gesturing with her arm before "loo[king] around just a little bit with her eyes, wondering if anybody saw her." Mr. Lowe described Juror 17's behavior as "alarming." Trial counsel did not object or seek to have Juror 17 removed from the jury.

Trial counsel testified that Juror 17 would not talk to the defense investigator after the trial. Trial counsel also reported that an alternate juror told the investigator that Juror 17 "had very strong opinions from the beginning" and that she appeared to have "an agenda" and seemed "hostile" toward Petitioner.

Appellate counsel testified that some of Juror 17's questionnaire answers could be indicative of actual bias against Petitioner, such that she should been removed for cause. However, appellate counsel did not raise the issue on direct appeal because trial counsel failed to object during jury selection. Appellate counsel explained that there was little likelihood for success on appeal because there was no objection at trial. Appellate counsel opined that trial counsel should have challenged the juror for cause and/or used a peremptory challenge to remove Juror 17 from the jury. However, appellate counsel admitted that the answers on the questionnaire indicated that Juror 17 could have been a favorable juror. Additionally, appellate counsel agreed that it was not unusual for a juror to be exposed to pretrial publicity.

David Komisar, an expert in criminal defense, testified at the post-conviction hearing. In his opinion, "[t]here is no way a competent attorney would keep that lady on the jury, period." He viewed keeping Juror 17 on the jury as the "biggest mistake of the trial."

After the post-conviction hearing, the post-conviction court entered an order granting post-conviction relief. In that order, the trial court accredited the testimony of trial counsel, appellate counsel, and Mr. Komisar. The trial court also considered the jury questionnaire, the transcript of voir dire, and the testimony of Mr. Lowe as to his observations. The post-conviction court noted that when asked about whether she had an opinion on the guilt of innocence of Petitioner, Juror 17 gave a different answer in her questionnaire than she gave while being questioned during voir dire. The post-conviction court commented that the answer in the questionnaire was "impossible to dismiss as being insignificant" finding that Juror 17 was "untruthful and possibly lied outright about her preconceived opinion concerning Petitioner for lying and killing two (2) newborns" in order to "carry that opinion into the jury trial." The post-conviction court also accredited the testimony of Mr. Lowe who observed Juror 17 when she "pumped her fist" in public. The post-conviction court determined it could not ignore the "possibility of prejudice" finding that Juror 17 "wasn't fair or impartial before she was selected and that her []partiality existed throughout voir dire, the jury trial, and through jury deliberations." As a result, Petitioner's constitutional rights were "violated under due process provisions." The post-conviction court also went on to find that trial counsel was deficient for failing to challenge Juror 17 for cause or exercise a peremptory challenge to remove Juror 17 from the jury. Moreover, trial counsel failed to "even address" Juror 17 about her opinion in the questionnaire that Petitioner "lied and killed 2 newborns." The post-conviction court determined that trial counsel's ineffectiveness prejudiced Petitioner by "calling into questions the reliability of the outcome of the jury trial." As a result of those findings, the post-conviction court granted relief and ordered a new trial. The State appealed.

*Analysis*

*Due Process Tolling of the Statute of Limitations*

On appeal, the State argues first that the trial court erroneously granted due process tolling of the post-conviction statute of limitations based on "mere attorney error." Specifically, the State argues that attorney error alone, even when committed by multiple attorneys, is "not a justifiable basis to excuse a time-barred petition" for post-conviction relief. Petitioner disagrees, arguing that due process tolling mandates the tolling of the statute of limitations because Petitioner was "positively misled by the incorrect and contradictory legal advice of her several attorneys."

There is no question that the petition for post-conviction relief filed herein was untimely. However, we find it germane to the analysis of the post-conviction court's resolution of the due process issue to include a brief discussion of the evolution of the statute of limitations for the filing of a post-conviction petition. Before 1967, habeas corpus was the sole vehicle with which to initiate a collateral attack on a conviction in Tennessee. *Carter v. State*, 952 S.W.2d 417, 418 (Tenn. 1997). Criticism of habeas corpus as a remedy led to the creation of the Post-Conviction Procedure Act of 1967 as a means to provide a wider range of collateral challenges to criminal convictions based on constitutional error. *Id.* In the original permutation of the act there was no statute of limitations for post-conviction petitions. *Id.* However, in 1986, the legislature adopted a three-year statute of limitations to apply prospectively to petitions seeking post-conviction relief. *See* T.C.A. § 40-30-102 (repealed 1995). Ultimately, in May of 1995, partly in response to the large number of post-conviction cases and the strain they placed on the court system, the legislature enacted the Post-Conviction Procedure Act of 1995. The new act made several changes to post-conviction procedure, including shortening the statute of limitations period to one year and limiting the number of petitions that could be filed. T.C.A. § 40-30-202 (Supp. 1996). The statute of limitations related to the filing of post-conviction petitions has remained unchanged since that time and is set forth in Tennessee Code Annotated section 40-30-102(a). That section provides:

> [A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the *highest state appellate court* to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

*Id.* (Emphasis added).

Here, the Tennessee Supreme Court issued its opinion in Petitioner's case on July 20, 2018. Petitioner's request for rehearing was denied on August 1, 2018. The denial of the request for rehearing was the final action of the highest court in Tennessee. Thus, the statute of limitations commenced the following day, on August 2, 2018, and Petitioner had

one year from that date to file a petition for post-conviction relief. T.C.A. § 40-30-102(a). The petition was not filed until September 5, 2019.

An untimely post-conviction petition divests the post-conviction court of subject matter jurisdiction and is subject to summary dismissal. *See* T.C.A. §§ 40-30-102(b); -106(b). Seeking a writ of certiorari from the United States Supreme Court does not toll the post-conviction statute of limitations. *Whitehead v. State*, 402 S.W.3d 615, 618 (Tenn. 2013).

There are exceptions to the statute of limitations for petitions for post-conviction relief set forth in statute. *See, e.g.*, T.C.A. § 40-30-102(b). The parties agree that none of the statutory exceptions to the statute of limitations apply to this case. Instead, Petitioner relies on theories of due process tolling and other due process considerations in her attempt to toll the statute of limitations for post-conviction relief. The Tennessee Supreme Court set forth a two-prong test for determining whether tolling of the statute of limitations is warranted:

> A petitioner is entitled to due process tolling upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing.

*Whitehead*, 402 S.W.3d at 631 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Bush v. State*, 428 S.W.3d 1, 22 (Tenn. 2014) (stating that the *Holland* test adopted in *Whitehead* applies to all claims of due process tolling). The Tennessee Supreme Court has identified three circumstances in which due process requires tolling of the statute of limitations: (1) claims arising after the statute of limitations has expired; (2) claims based on mental incompetence that prevented the petitioner from complying with the statute of limitations; and (3) claims based on attorney misconduct. *Whitehead*, 402 S.W.3d at 623-24. So, to succeed, a petitioner must provide sufficient facts that prove one of these limited circumstances affected the filing of his or her post-conviction petition. *Williams v. State*, No. W2011-00202-CCA-R3-PC, 2011 WL 2410364, at *1-2 (Tenn. Crim. App. June 9, 2011), *perm. app. denied* (Tenn. Oct. 18, 2011). To comply with due process, post-conviction petitioners must be afforded an opportunity to seek post-conviction relief "at a meaningful time and in a meaningful manner." *Buford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). Absent sufficient facts establishing a petitioner is entitled to due process tolling, an untimely petition must be dismissed. *Id.* "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to de novo review." *Id.* at 621 (citing *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011)). Despite reviewing the post-conviction court's decision de novo, we are

bound by the post-conviction court's factual findings unless the evidence preponderates to the contrary. *Id.*

The only circumstance that applies in this case is a claim based on attorney misconduct. *See Whitehead*, 402 S.W.3d at 623-24. In *Whitehead*, the supreme court likened "Tennessee's doctrine of due process tolling in the context of petitions for post-conviction relief" to the "doctrine of equitable tolling recognized by the federal courts and the courts of other states": a remedy to "be used sparingly" in "extreme cases where failure to invoke the principles of equity would lead to unacceptably unjust outcomes." *Id.* at 626 (quoting *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (internal citations omitted)).

In *Whitehead v. State*, the petitioner's appellate counsel miscalculated the deadline for filing for post-conviction relief and failed to send the petitioner's case file to him until the correct deadline had passed. 402 S.W.3d at 621. In its application of the two-prong test to the petitioner's case, the supreme court determined that the petitioner had pursued his rights diligently by researching post-conviction case law when he received the letter from his appellate counsel with the incorrect filing date and drafting a lengthy petition, which he submitted, albeit by the incorrect deadline. *Id.* at 632. The supreme court also concluded that the petitioner "faced an extraordinary combination of circumstances that prevented him from filing his post-conviction petition on time-circumstances that were tantamount to attorney abandonment." *Id.* The conclusion was based on "the combination of [the petitioner]'s appellate lawyer's failures, including the misleading deadline and the retention of [the petitioner]'s files[ ]"; however, the supreme court noted that "[n]one of the failures, standing alone, would be sufficient" to rise to the level of attorney abandonment. *Id.* Therefore, the Tennessee Supreme Court held that, in the petitioner's case, "the principles of due process and fundamental fairness require that the statute of limitations" in the Post-Conviction Procedures Act be tolled. *Id.* at 634. The court deemed it an extraordinary circumstance when the petitioner's "attorney of record abandon[ed the petitioner] or act[ed] in a way directly adverse to the [petitioner's] interests, such as by actively lying or otherwise misleading the [petitioner] to believe things about his or her case that are not true. *Id.* at 631. The Court specifically rejected "an artificial and unhelpful distinction between attorney negligence and attorney misrepresentation" because the distinction focused on the "mental state" of the attorney rather than "whether the result of that negligent, reckless, or intentional misbehavior amounted to an extraordinary circumstance beyond the petitioner's control that thwarted timely filing." *Id.* at 630-31. The Court cautioned this was a "very high" bar and cautioned that tolling was reserved for situations where it would be "unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* at 631-32.

In rendering its decision, the Court focused on federal case law from which the two-prong standard originated, noting that the standard was based on principles of agency law, meaning that "the mistakes of counsel are constructively attributable to the client, at least in the post-conviction context," but a "litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Id.* at 630-31 (quoting *Holland*, 560 U.S. at 656, 659 (Alito, J., concurring)). Thus, "an attorney's mistake in miscalculating the limitations period 'is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel.'" *Id.* at 629 (quoting *Holland*, 560 U.S. at 656 (Alito, J., concurring)).

This analysis has been applied to other factual scenarios as well. For example, even when based on "an attorney's negligent failure to render legal advice" a "petitioner's personal ignorance of post-conviction procedures" is an insufficient basis for due process tolling. *State v. Phillips*, 904 S.W.2d 123, 124 (Tenn. Crim. App. 1995); *see also McVay v. State*, No. W2021-00324-CCA-R3-PC, 2022 WL 421112, at *4 (Tenn. Crim. App. Feb. 11, 2022), *perm. app. denied* (Tenn. June 9, 2022); *Davis v. State*, No. M2015-00976-CCA-R3-PC, 2016 WL 837361, at *4 (Tenn. Crim. App. Mar 4, 2016), *perm. app. denied* (Tenn. June 23, 2016); *Johnson v. State*, No. E2013-01464-CCA-R3-PC, 2014 WL 1118018, at *2 (Tenn. Crim. App. Mar. 20, 2014), *perm. app. denied* (Tenn. June 24, 2014). Additionally, this Court has determined that attorney miscalculation as to the statute of limitations alone is not enough to warrant due process tolling of the statute of limitations. *Madden v. State*, No. M2016-01396-CCA-R3-PC, 2017 WL 2875724, at *4 (Tenn. Crim. App. July 6, 2017) (refusing to toll statute of limitations where attorney provided incorrect deadline to file post-conviction petition), *perm. app. denied* (Tenn. Nov. 16, 2017).

Reviewing the ruling of the post-conviction court de novo, we conclude that while at least three attorneys erroneously calculated the statute of limitations for filing Petitioner's post-conviction petition, using the test set forth in *Whitehead*, the miscalculation and poor advice alone do not justify due process tolling. *Whitehead*, 402 S.W.3d at 618, 629. In fact, the Court in *Whitehead* noted that the mistake alone was insufficient for tolling, granting relief based on a combination of errors including counsel's failure to return the case file after numerous requests. *Id.* Here, there was no other active interference thwarting Petitioner's ability to file a timely petition for post-conviction relief. At the time Petitioner received the miscalculated dates from appellate counsel and certiorari counsel, they were both continuously advocating on Petitioner's behalf, thereby operating as her agents. Petitioner presumably had access to her files and was represented by more than one counsel. Attorney error does not constitute an extraordinary circumstance beyond Petitioner's control that prevented her from filing a petition for post-conviction relief. *Id.* Consequently, the post-conviction court erred in granting Petitioner's request for tolling of the statute of limitations and allowing Petitioner to file the petition

- 13 -

for post-conviction relief. Moreover, the post-conviction court should never have held a post-conviction hearing or granted post-conviction relief because the post-conviction court had no jurisdiction to hear an untimely petition. As a result, we reverse the post-conviction court's grant of due process tolling, reverse the grant of post-conviction relief, dismiss the petition, and reinstate Petitioner's convictions.

*Juror Bias/Ineffective Assistance of Counsel*

While ordinarily our analysis would end with the reversal of the grant of post-conviction relief and reinstatement of Petitioner's convictions, we are compelled to address the post-conviction court's grant of post-conviction relief in the event of further appeal. The post-conviction court granted relief for two separate reasons, both ultimately based on juror bias. First, the post-conviction court determined that Juror 17 was actually biased in violation of the Sixth Amendment. Additionally, the post-conviction court determined that trial counsel was ineffective for failing to remove Juror 17 from the jury during voir dire.[4]

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

*A. Waiver of Standalone Sixth Amendment Claim*

---

[4] We note that the written order granting relief filed by the post-conviction court did not address each of the issues raised in the petition for post-conviction relief. The Tennessee Supreme Court has deemed it axiomatic that the post-conviction court "set forth . . . all grounds presented" in the post-conviction petition and state the findings of fact and conclusions of law with regard to each ground in the order or written memorandum. *Tate v. State*, 679 S.W.3d 631 (Tenn. 2023).

On appeal, the State argues that the post-conviction court erred by granting post-conviction relief on the basis of an allegedly biased juror. First, the State insists that Petitioner waived the freestanding claim of juror bias because it was not raised in a motion for new trial or on direct appeal. Next, the State argues that it was not on notice that it needed to raise waiver as an issue prior to the evidentiary hearing because Petitioner also failed to raise this issue in her petition for post-conviction relief. However, even if Petitioner did not waive the issue, the State insists that Petitioner failed to show actual bias. Petitioner, on the other hand, first argues that the State has waived the issue because the State failed to "separately delineate" this issue in its statement of the issues. Next, Petitioner admits that jury bias was not litigated at trial or on appeal and that trial counsel failed to include the jury questionnaires and exclusion slips in the trial record but argues that trial counsel's failure to include these items in the record explains why the issue was not presented on direct appeal. Moreover, Petitioner argues that trial counsel was ineffective for failing to raise the issue and this does not prevent Petitioner from bringing a standalone claim of juror bias. Finally, Petitioner argues that counsel "orally moved to amend her Petition for Post-Conviction Relief to conform to the evidence presented at the hearing" so the State had enough time to object and argue waiver such that failing to do so precludes the State from raising the waiver issue now.

The petition for post-conviction relief alleged that "trial counsel failed to make for cause challenges or to use all of their peremptory challenges during voir dire." There was no standalone claim related to the Sixth Amendment presented in the petition. A post-conviction petitioner generally waives a ground for relief where he or she does not include the ground in the petition. *See* T.C.A. § 40-30-110(c) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."); Tenn. Sup. Ct. R. 28, § 8(D)(4) ("The hearing shall be limited to issues raised in the petition."). Additionally, Petitioner failed to raise this issue on direct appeal. Tennessee Code Annotated section 40-30-106(g) states:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

None of those scenarios apply here. Petitioner could have raised this issue in her motion for new trial or on appeal and did not do so. *See, e.g., Jones v. State*, 456 S.W.2d 860, 863

(Tenn. Crim. App. 1970) (failure to raise issue about disqualification of jurors prior to post-conviction review resulted in waiver of the issue on post-conviction review); *Bland v. State*, 451 S.W.2d 699, 701 (Tenn. Crim. App. 1969) (holding failure to object at time of jury selection prohibited post-conviction review of that issue). Petitioner could also have alleged in her petition that trial counsel was ineffective for failing to raise the issue on direct appeal. She failed to do so. The post-conviction statute "controls the scope of issues on review and expressly prohibits post-conviction consideration of issues deemed previously determined or waived." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020). We recognize that a petitioner may amend the petition within thirty days or at any other time upon a showing of good cause. *See* T.C.A. § 40-30-107(b)(2). Moreover, the post-conviction court may permit an amendment to the petition, even during the evidentiary hearing, "when the presentation of the merits of the cause will otherwise be subserved." Tenn. Sup. Ct. R. 28, § 8(D)(5). Despite giving a petitioner the right to amend the petition even during the evidentiary hearing, we are unaware of anything that would permit a court to consider a post-conviction issue that was not raised in the original petition or in a recognized amendment. *See State v. Bristol*, 654 S.W.3d 917, 927 n.4 (Tenn. 2022) ("The legislature has eliminated this discretion [to consider unpresented or unpreserved issues] in post-conviction proceedings."). Here, counsel for Petitioner stated the following at the conclusion of the post-conviction hearing immediately before oral argument:

> I would formally move to amend the petition to conform with the proof adduced at this hearing. The Court has been clear with me that it would permit that, and that I would not be limited to the allegations in the petition, which I really appreciate. . . .

Our supreme court has made clear that we may consider a post-conviction issue on appeal only when that issue (1) was formally raised in the post-conviction petition or an amendment; or (2) was argued at the evidentiary hearing and was decided by the post-conviction court without objection by the State. *See Holland*, 610 S.W.3d at 458 (stating "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection."). While there was certainly testimony at the hearing on the issue of juror bias, it was presented in the context of ineffective assistance of counsel. Again, Petitioner did not raise a standalone claim with regard to juror bias, the post-conviction court considered it sua sponte when it asked a defense expert at the hearing if there was "a constitutional due process violation separate [from deficient performance]?"

Moreover, a blanket statement seeking to "amend the petition to conform with the proof" without ever specifying what was being amended, in our view, does not formally raise the issue in a petition or a formal amendment to the petition such that the issue is

- 16 -

preserved for appellate review. *See Davis v. State*, No. M2023-00048-CCA-R3-CD, 2024 WL 446441, at *6-7 (Tenn. Crim. App. Feb. 6, 2024) (determining issue waived by failing to present it in a post-conviction petition or proper amendment to a post-conviction petition), *no perm. app. filed*. The post-conviction court should not have considered this issue as a basis for post-conviction relief. This issue is waived.

### B. Ineffective Assistance of Counsel During Jury Selection

Next, the post-conviction court determined that trial counsel was ineffective "in the selection of [Juror 17] on this jury panel, and that the selection prejudiced the Petitioner by calling into question[] the reliability of the outcome of the jury trial." The State argues that because Petitioner failed to show Juror 17 was actually biased, Petitioner cannot show prejudice. Petitioner disagrees, arguing instead that nothing preponderates against the factual or legal findings of the post-conviction court in concluding that Juror 17 was actually biased.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).

Under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, every criminal defendant has the right to a trial by an impartial jury. *State v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013) (citing *State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012)). Specifically, every defendant is guaranteed "'a trial by a jury free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation.'" *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim.

App. 1993) (quoting *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954)). During the jury selection process, voir dire serves the essential purpose of allowing questioning of potential jurors regarding their qualifications, backgrounds, associations, and experiences to reveal any potential biases and to allow counsel to intelligently exercise any challenges. *See Smith v. State*, 357 S.W.3d 322, 347 (Tenn. 2011) (quoting *State v. Onidas*, 635 S.W.2d 516, 517 (Tenn. 1982)); Tenn. R. Crim. P. 24(b). "'The ultimate goal of voir dire is to ensure that jurors are competent, unbiased and impartial.'" *Smith*, 357 S.W.3d at 347 (quoting *State v. Hugueley*, 185 S.W.3d 356, 390 (Tenn. 2006)).

Challenges to a juror's qualifications typically fall into two categories: proper defectum ("on account of defect") and proper affectum ("on account of prejudice"). *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003) (citing *Akins*, 867 S.W.2d at 355). Proper defectum challenges are "based upon general disqualifications, such as alienage, family relationship, or statutory mandate," and must be raised before the return of the verdict. *Id.* Proper affectum challenges, on the other hand, are "based upon the existence of bias, prejudice, or partiality towards one party in the litigation actually shown to exist or presumed to exist from circumstances" and may be raised after the verdict in a motion for new trial. *Id.*

Addressing the prejudice prong of *Strickland* first, we conclude that the post-conviction court improperly concluded that Petitioner established prejudice resulting from trial counsel's alleged deficiencies in conducting voir dire. Here, the post-conviction court determined:

> [Juror 17] was untruthful and possibly lied outright about her preconceived opinion concerning the Petitioner for lying and killing two (2) newborns. That is something that is not dismissed from the mind easily, and [Juror 17] said nothing in voir dire about changing her opinion from "lying and killing" to no opinion at all. This Court has concluded from the evidence that [Juror 17] either lied or concealed her opinion to carry that opinion into the jury trial.
>
> Further, this Court relied on the testimony of Mark Lowe, father of the Petitioner, who sat close to [Juror 17] in the jury box in the courtroom after she was empaneled. Mr. Lowe testified that when the Court announced those jurors seated in the jury box would be seated, [Juror 17] "pumped her fist" in public.

"Whether a juror's partiality may be presumed from the circumstances is a question of law." *Smith*, 357 S.W.3d at 358 (citing *Durham v. State*, 188 S.W.2d 555, 559 (Tenn. 1945); *State v. Akins*, 867 S.W.2d 350, 355-56 (Tenn. Crim. App. 1993)). In Tennessee, a

- 18 -

presumption of juror bias arises "'[w]hen a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality. . . .'" *Carruthers*, 145 S.W.3d at 95 (citing *Akins*, 867 S.W.2d at 355). Likewise, "[s]ilence on the juror's part when asked a question reasonably calculated to produce an answer is tantamount to a negative answer." *Akins*, 867 S.W.2d at 355. Therefore, a juror's "failure to disclose information in the face of a material question reasonably calculated to produce the answer or false disclosures give rise to a presumption of bias and partiality." *Id.* at 356 (footnotes omitted). Other circumstances justifying a presumption of bias include a juror's willful concealment of prior involvement as the prosecuting witness in a similar case or a juror's concealment of a close personal or familial relationship with one of the parties involved in the trial. *See Hugueley*, 185 S.W.3d at 378 (citing *Durham*, 188 S.W.2d at 559, and *Toombs*, 270 S.W.2d at 651). Moreover, a prospective juror cannot be struck from a jury solely on a single response to a jury questionnaire without taking into account the overall context or proof of rehabilitation. *Sexton*, 368 S.W.3d 371, 392-95 (Tenn. 2012).

Here, unlike the scenarios above, when questioned by counsel for the State and the trial court, Juror 17 insisted that she would be a fair and impartial juror. She acknowledged that she, like many other jurors, had heard about or read about the case prior to being selected for jury duty. She affirmatively indicated that she would decide the case based on the evidence and that she would afford Petitioner the presumption of innocence while taking into account the State's burden of proof. To be sure, Juror 17 filled out a jury questionnaire and admitted that she "formed an opinion based on what" she heard about the case on the local news. Her opinion was that Petitioner "lied and killed her [two] newborns." However, both the trial judge and counsel for the State asked Juror 17 about whether she had formed an "opinion". Each time she answered negatively. Moreover, despite her initial answer about forming an opinion, Juror 17 marked "Yes" when asked at questions 56 and 57 on the jury questionnaire if she "could lay that opinion aside, and based on the evidence and law, reach a fair verdict" and "[c]ould sit as a juror in this case, listen to the proof and law and be absolutely fair." In the details section, Juror 17 indicated that she was "honest [and] follow[s] the law."

We disagree with the post-conviction court that Petitioner proved actual bias based on her answers about prejudging the case. Moreover, we determine the evidence preponderates against the post-conviction court's conclusion that "[Juror 17] said nothing in voir dire about changing her opinion from 'lying and killing' to no opinion at all." Juror 17 explained that despite her opinion, she could be a fair and impartial juror.

With regard to the "fist pump" gesture, we disagree with the post-conviction court's conclusion that the gesture indicated bias. There could be a litany of reasons to make such a gesture after being empaneled as a juror. Often times, jury selection is a lengthy process. Juror 17 could have merely been expressing excitement that the selection process was over

or that she might finally get to exit the courtroom after a lengthy session. Juror 17 could have just been excited to get to participate in the judicial process. To presume a nefarious intent of bias from the gesture without further explanation is misguided. We determine that the post-conviction court improperly determined that there was willful concealment on the part of Juror 17 that showed actual bias.[5] In our review, we fail to see how Petitioner proved prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because we determine that the post-conviction court improperly determined Petitioner was prejudiced, there is no need for us to analyze the second prong of *Strickland*. The post-conviction court improperly granted post-conviction relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is reversed and we dismiss the post-conviction petition. Petitioner's convictions are reinstated and the matter is remanded to the trial court for any further proceedings which may be necessary.

_____
TIMOTHY L. EASTER, JUDGE

---

[5] We note that the State argues on appeal that the post-conviction court erred by preventing the State from calling Juror 17 to testify at the post-conviction hearing. Counsel for the State told the post-conviction court that they had spoken to Juror 17 and she would testify that she did not make a "fist pump." There was a rather lengthy discussion between counsel for the State, counsel for Petitioner, and the post-conviction court about whether it was even permissible for Juror 17 to testify at the hearing. During that discussion, counsel for Petitioner argued that the testimony was not proper under Tennessee Rule of Evidence 606. The trial court ultimately accredited the testimony of Mr. Lowe with regard to the gesture and declined to allow the testimony of Juror 17. In our view, it was Petitioner's burden to prove prejudice and the issue of whether the post-conviction court erred in refusing to allow the State to advance the testimony of the juror at the post-conviction hearing is of no consequence to our decision here that Petitioner failed to prove prejudice. As pointed out by trial counsel for Defendant, even if the trial court had allowed the testimony, the juror could have very well testified that she did not make the gesture at all.